## WILLIAM GINN *v.* ESLEY R. BRANDON.

An original surveyed township was divided into sections "by running through the same, each way, parallel lines at the end of every two miles, and making a corner on each of the lines at the end of every mile;" and afterward a supplemental survey was made, under a subsequent statute, which directed that these two mile blocks should be subdivided "by running straight lines from the mile corners thus marked to the opposite corresponding corners." *Held*, that where the original mile

Ginn *v.* Brandon.

corners in a certain block can be clearly identified, the courses of the lines of subdivision, within the block can not be determined by proof of monuments, blazes, or other witness found in other blocks in the township.

MOTION for leave to file a petition in error to the District Court of Darke county.

The plaintiff in error sued the defendant in error to recover the possession of a strip of land thirty-two rods wide, alleged in his petition to be the north end of the southeast quarter of the northeast quarter of section 9, township 11, range 4 east, situate in Darke county.

The defendant was the admitted owner of the northeast quarter of the section, and the plaintiff of the southeast quarter, the real controversy between the parties being whether the strip in dispute was in the one or the other quarter. The question in issue was simply one of disputed boundary.

During the trial, exceptions were taken by the defendant to the admission of certain testimony offered by the plaintiff, and also to certain instructions given to the jury in relation to such testimony.

A verdict was rendered for the plaintiff, and a new trial being refused, the defendant took his bill of exceptions, embodying all the testimony, the charge of the court, and certain requests to charge which were refused.

The district court, on petition in error by the defendant, reversed the judgment of the common pleas, and remanded the cause for a new trial. It is now alleged that the judgment of reversal was erroneous.

*J. S. Conklin,* for the motion.
*John W. Harvey* and *J. R. Knox,* contra.

MCILVAINE, J. In the court of common pleas the real controversy was in relation to the location of the true boundary line between sections 9 and 4, in the township named. Section 4 lies immediately north of section 9;

section 3 east of section 4, and section 10 east of section 9. The northeast corner of 9, the southeast corner of 4, the southwest corner of 3, and the northwest corner of 10 are located at a point common to all. Each party on the trial strove to establish this corner in accordance with his claim. The plaintiff sought to prove that it was situated at a point ninety-six chains north of the southeast corner of section 9; and the defendant, that it was only eighty chains north of the southeast corner of the section. The distance between the points claimed by the parties respectively was sixty-four rods, on a line running north and south.

The cause appears to have been tried on the assumption that the boundary between the sections 9 and 4 was a line running west from the corner in dispute, and upon the further assumption, that, if the corner was established according to the claim of the plaintiff, he would be entitled to recover as prayed for in his petition.

As to these assumptions we need not now remark, as the only questions submitted to us in argument relate to the correctness of the rules adopted in the common pleas for the discovery of the northeast corner of section 9, the true locality of which became and was a material matter in the case, though not the fact directly in issue—to wit, the boundary between the northeast quarter and the southeast quarter of the northeast quarter of the section.

The exterior lines of the four sections, 3, 4, 9, and 10, as a block two miles square, were originally surveyed and marked, in the year 1800, by one Daniel C. Cooper, a deputy surveyor of the United States, pursuant to the provisions of an act of Congress, passed May 18, 1796, entitled "an act providing for the sale of the lands of the United States in the territory northwest of the river Ohio, and above the mouth of the Kentucky river." 2 U. S. L. 533. The territory in question having been divided under the act into townships of six miles square, the township in question was subdivided in accordance with the following provision in the 2d section of the act, namely : " One-half of said townships, taking them alternately, shall be sub-

divided into *sections,* containing, as nearly as may be, six hundred and forty acres each, by running through the same, each way, parallel lines, *at the end of every two miles,* and by making *a corner on each of said lines at the end of every mile,"* etc.

Afterward, in the fall of 1805, these "two-mile" blocks, in pursuance of the provisions of the act of Congress of February 11, 1805 (3 U. S. L. 637), were subdivided by one Jeremiah McLene, as a deputy surveyor of the United States. The 1st section of this act is as follows : " That the surveyor-general shall cause all those lands north of the Ohio river, which, by virtue of the act entitled ' an act providing for the sale of the lands of the United States in the territory northwest of the river Ohio, and above the mouth of the Kentucky river,' were subdivided by running through the townships parallel lines, each way, at the end of every two miles, to be subdivided into sections by running straight lines *from the mile corners thus marked to the opposite corresponding corners,* and by marking on each of said lines intermediate corners, as nearly as possible equidistant from *the corners of the sections on the same,"* etc.

On the trial in the common pleas, it was claimed by the plaintiff that the interior corner of the four sections in this block was established and marked by McLene at a point sixteen chains north of a straight line between the opposite corresponding corners established and marked by Cooper on the east and west boundaries of the block, and that the division line between the 4th and 9th sections, as run by McLene, was at the same distance north, and parallel with the last-named straight line.

As tending to prove this claim, the plaintiff was allowed, against the objection of defendant, to offer testimony as to the location of section corners and lines established by McLene within blocks east and west of the block composed of sections 3, 4, 9, and 10. The following diagram will illustrate the case :

Ginn *v.* Brandon.

| 6 | | 5 | 4 | 3 | 2 | | 1 |
|---|---|---|---|---|---|---|---|
| | B | | C | | | B | |
| 7 | | 8 | A    9    C | 10    A | 11 | | 12 |

The black lines forming the exterior of the three " two-mile blocks " are the Cooper lines.

The dotted lines are the alleged subdivision lines by McLene.

The points A and A are section corners fixed by Cooper.

B and B are interior section corners fixed by McLene.

C and C are the disputed corners of sections 3, 4, 9, and 10.

The lines A A are between opposite corresponding section corners as marked by Cooper.

Among other things the court charged the jury as follows: " The great trouble seems to grow out of the difficulty in finding the section corners and lines established by the survey of McLene, who, it is claimed, subdivided the block into sections and quarter-sections as a government surveyor. The true rule for the jury in such case is to ascertain the corners and lines established by McLene, of and through the disputed grounds, if they can ; and in doing this, they may look to the established corners of other sections and lines on the same route, if any can be found, and as far as such corners, etc., may throw light on the disputed line, the jury may consider the same," etc. The court, however, refused to instruct the jury as requested, " that the duty of the government surveyor being defined by the act of Congress, it will be presumed, in the absence of positive proof to the contrary, that his survey was made in conformity to said law."

On looking into the testimony, all of which is set out in the record, we find that there was little doubt, if any, as to the intermediate section or mile corners as fixed in the original survey by Cooper. Indeed, it should be said that these

corners were clearly located and established by the proof, if not admitted by the parties. There was no controversy as to the exact locality of these corners. And it is also clear, that, if McLene had executed the express direction and requirement of the statute, in running straight lines between these opposite corresponding corners, the boundary line between sections 4 and 9 would be found where the defendant claims it. But while as a fact this is so, it must be conceded, on the other hand, that the interior corner of these sections, as well as the true boundary between sections 4 and 9, must, in law, be established and held to be wherever McLene, in making the subdivision directed by the statute, fixed them, whether they be found in or upon straight lines or not.

It will be observed that all the corners of sections on the exterior lines of these " two-mile blocks " were unalterably fixed by the original survey of Cooper under the statute of 1796. No re-establishment of these corners has been authorized. The only authority conferred upon the surveyor general or his deputies by the act of 1805, was to subdivide these blocks, by running the section lines from the mile corners established under the act of 1796 to opposite corresponding corners. McLene was not authorized to revise the survey of Cooper, but simply to commence where he left off. So that, in the system of the surveys, now complete, the subdivision of each " two-mile block" must be regarded as supplemental to, and not a revision of the former survey. It appears also, from the testimony, that no monument or witness is known to exist anywhere within the limits of the block composed of sections 3, 4, 9, and 10 of any corner or line fixed by McLene, unless, possibly, as to the interior corner in dispute, while the exterior corners fixed by Cooper are easily found.

And if it were conceded that the jury might have found, upon the testimony, that this disputed corner was at the point claimed by plaintiff, we have been unable to discover any evidence that would justify the finding that the boundary line between sections 4 and 9 was established by Mc-

Lene 64 rods north of and parallel with a straight line between the opposite corresponding corners established by Cooper, unless it was inferred by the jury, from the single fact that the interior section corners of other blocks, east and west of the one in dispute, were " on the same route," as it is expressed in the charge. But we are of opinion that the jury had no right to draw such inference, for the reason that it was the plain duty of the surveyor to divide the block in question by running a line from the mile corner fixed by Cooper on one side of the block to the like corner upon the other side, without reference to any survey made, or to be made, of the block either east or west of it. Such being the plain duty required of McLene by the statute, it must be presumed that the termini of the east and west section line within this block were identical with the mile corners fixed by Cooper, until the contrary is proved. And if such proof is found in monuments or witnesses created by the surveyor, they should be found within the limits of the block and not beyond them. Any witness found without the limits of the block, having no relation to the survey within the block, must, of necessity, be destitute of credit.

And while we are unable to say that the testimony in relation to McLene's survey and subdivision of other blocks was not admissible for any purpose (as, for instance, to reflect upon the probable location of the Cooper corners, or, possibly, for some other purposes), we have no hesitancy in saying that the location of the Cooper corners on each side of the block being found and clearly identified, the course of the section lines within the block should not be determined by such testimony.

In view of all the evidence offered in the case, as well also as the refusal of the court to charge as requested by the defendant, we think the charge as given was calculated to mislead the jury as to the character of the proof necessary to sustain the plaintiff's claim.

*Motion overruled.*